UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Peter Lucianno Curbello,

            Petitioner,

vs.                         REPORT AND RECOMMENDATION

Marty C. Anderson, Warden,
United States Department of
Justice, Bureau of Prisons,
FMC Rochester, Minn.,

            Respondents.       Civ. No. 05-2469 (PAM/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, see Title 28 U.S.C. §2241.

The Petitioner appears pro se, and the Respondents appear by Steven L. Schleicher, Assistant United States Attorney.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be denied as moot.

## II.  Factual Background

The Petitioner was convicted of Social Security and Bank Fraud, in violation of Title 42 U.S.C. §408(a)(7)(b), and Title 18 U.S.C. §1344(2), by the United States District Court for the Eastern District of Wisconsin.  On December 3, 2004, he was sentenced to a 24-month term of imprisonment, followed by five (5) years of supervised release.  The Bureau of Prisons ("BOP") placed the Petitioner at the Federal Medical Center, in Rochester, Minnesota ("FMC-Rochester") on April 13, 2005.  The Petitioner's projected release date was December 21, 2005, via good conduct time release.  See, Declaration of Angela Buege, ("Buege Decl."), Docket No. 7, Att. A, at ¶3.

On April 15, 2005, the Inmate Systems Office at FMC-Rochester sent inquiries to the Clark County Sheriff's Department in Las Vegas, Nevada, and the El Dorado County Sheriff's Department in Placerville, California, regarding possible outstanding charges that the Petitioner may be facing in their districts.  Id. at ¶4.  The Petitioner alleges that, on April 23, 2005, he requested the FMC-Rochester staff to provide him with paperwork for a demand of speedy disposition.  See, Memorandum in Support of Petition for Writ of Habeas Corpus ("Petitioner's Memorandum"), Docket No. 3, at p. 6; Ex. 4..  The Inmate Request to Staff Form lacks a staff signature, and

according to Respondents, there is no evidence that Inmates Systems staff received the request.  See, Buege Decl., at ¶6; Petitioner's Memorandum, Ex. 4.

On April 26, 2005, the Inmate Systems Office received word from the Las Vegas Metropolitan Police Department, in Las Vegas, Nevada, that the statewide active Warrants they held for the Petitioner were not extraditable out of state.  See Buege Decl., at ¶4.  On April 30, 2005, the Petitioner submitted another request, this time asking for a copy of his Judgment and Commitment.  Petitioner's Memorandum, at p. 6; Ex. 5.  The Petitioner asserted that the purpose underlying his request was so he "m[ight] personally file a 'demand for speedy disposition' on two possible detainers * * * ."  Id., Ex. 5.  This request was signed by a staff member.

On May 31, 2005, the Petitioner mailed a Demand for Speedy Disposition, under the Interstate Agreement on Detainers Act ("IADA"), see, Title 18 U.S.C. Appendix 2, §2.[1] to the El Dorado County Superior Court, and Sheriff's Department.

---

[1] The relevant provisions of the IADA provide that:

> (a)   Whenever a person has  * * * pending in any other party State  * * * any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate

(continued...)

Id., at p. 7; Ex. 7. The Petitioner subsequently received a letter, dated June 28, 2005, from the Chief Assistant District Attorney for El Dorado County, which informed him that his Demand for Speedy Disposition was defective under the IADA, because certain documentation required to be attached by Federal authorities was missing. Id., Ex. 12. The letter noted that the Petitioner would need to contact the relevant Federal prison authorities, and request that they process his demand through "the usual channels." Id.

---

[1](...continued)
>court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint[.] * * * The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner
>
>\*     \*     \*
>
>(b)    The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner or corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

Title 18 U.S.C. App. 2, §2, Art. III(a), (b).

On August 22, 2005, the Inmate Systems Office at FMC-Rochester received a request for a hold against the Petitioner from the El Dorado County Sheriff's Department. <u>Buege Decl.</u>, at ¶5; Att. C and D.  On August 23, 2005, the Petitioner was given notification from the Inmate Systems Office, via the Agreement on Detainers Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition. <u>Id.</u>, at ¶5, Att. E.  The content of the Agreement informed the Petitioner that he had "the right to request the appropriate prosecuting officer of the jurisdiction in which [the] indictment, information or complaint is pending and the appropriate court that a final disposition be made thereof." <u>Id.</u>  The Agreement further provided that, if the Petitioner wished to request final disposition, he needed to inform the Inmate Systems Manager of his institution of confinement. <u>Id.</u>

On October 24, 2005, the Petitioner filed this action, alleging in his first claim that the Respondents had failed to fulfill their obligations under the IADA by failing to construe the Act liberally so as to effectuate its purpose. <u>Petition for Writ of Habeas Corpus</u>, <u>Docket No. 1</u>, at ¶9.  The Petitioner requests the Court to find that he "need only give his local custodian written notice and written request for final disposition of charges underlying the detainer, and its [sic] then incumbent on the custodian to forward the paperwork to the appropriate prosecuting authorities in

court." Petitioner's Memorandum, at p. 16.  The Petitioner concedes that he did not "literally" comply with the requirements of the IADA.  See, id.

The Petitioner, in his second claim, contends that the IADA requires dismissal of the Indictment due to excessive pretrial delays.  Petition, at ¶9.  The Petitioner asserts that he was not brought to Trial within 180 days, and he requests that the Court quash the detainer lodged against him by El Dorado County, and that those charges be dismissed without prejudice.  Memorandum in Support, p. 16.  The Petitioner further alleges that, as a result of the Respondents' failure to fulfill their obligations under the Act, he was deprived of access to the Bureau of Prisons community corrections program.[2]  Memorandum in Support, p. 8.

While this action was pending, on December 21, 2005, the Petitioner completed service of his Federal sentence, and he was transferred to the custody of the State of Minnesota.  See, Supplemental Declaration of Angela Buege, Docket No. 14, at ¶3. On April 13, 2006, the Petitioner was extradited to California, where he was detained at the El Dorado County Detention Center.  See, Docket No. 18.   As a result, the

---

[2] Prisoners who have unresolved and pending charges, or detainers, which will likely lead to arrest, conviction or confinement, are not ordinarily allowed to participate in a Community Corrections Center program. See, Buege Decl., at ¶7; Att. F, Relevant Portions of Program Statement 7310.04, Community Corrections Center ("CCC") Utilization and Transfer Procedure, at p. 10.

Petitioner is no longer incarcerated at a Federal prison, and he is no longer under the Respondents' custody or supervision.

Since the Petitioner is no longer in Federal custody in this District, we must first consider whether there still is any "live" case or controversy, which can properly be redressed by a Writ of Habeas Corpus. We conclude that there is no longer any genuine case or controversy presented, and that no meaningful relief can be provided to the Petitioner by a Writ of Habeas Corpus.

### III.  Discussion

A.  <u>Standard of Review</u>. Article III of the Constitution allows Federal Courts to adjudicate only actual, ongoing cases or controversies. <u>Potter v. Norwest Mortgage, Inc.</u>, 329 F.3d 608, 611 (8th Cir. 2003). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate" and, "[w]hen an action no longer satisfies the case or controversy requirement, the action is moot and a federal court must dismiss the action." <u>Id.</u> [citations and internal quotations omitted].

The ongoing case-or-controversy requirement is no longer met if an event occurs, during the course of the proceedings, which precludes the Court from granting any meaningful relief to the party who initiated the action. <u>In re Grand Jury</u>

Subpoenas Duces Tecum, 78 F.3d 1307, 1310 (8th Cir. 1996), cert. denied, 519 U.S. 980 (1996). If it becomes impossible for the Court to provide any further redress for the claims that have been raised, the case must be dismissed as moot. Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990).

As a general rule, therefore, when a Petitioner for Habeas relief protests the conditions of his confinement, his claim becomes mooted when those conditions no longer exist. See, Hernandez v. Garrison, 916 F.2d 291, 293 (5th Cir. 1990); Thompson v. Smith, 719 F.2d 938, 940-41 (8th Cir. 1983)(Habeas claims mooted due to the Petitioner's transfer to another institution); Corgain v. Miller, 708 F.2d 1241, 1246 (7th Cir. 1983); Willis v. Ciccone, 506 F.2d 1011, 1019 (8th Cir. 1974). This rule similarly applies when a petitioner has been conditionally released, and is no longer in the custody of anyone over whom the District has jurisdiction. See, Copley v. Keohane, 150 F.3d 827, 830 (8th Cir. 1998), citing Jones v. Cunningham, 371 U.S. 236, 241 (1963).

There are exceptions to the mootness doctrine, however. As potentially applicable here, cases, which are "capable-of-repetition-yet-evading-review," are not subject to the doctrine. See, Spencer v. Kemna, 523 U.S. 1 (1998); Roe v. Wade, 410 U.S. 113, 125 (1973); Clark v. Brewer, 776 F.2d 226, 229 (8th Cir. 1985). This

exception applies, however, "only in exceptional situations, where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." Hickman v. Missouri, 144 F.3d 1141, 1142 (8th Cir. 1998), citing Spencer v. Kemna, supra.

    B. Legal Analysis. The Petitioner is no longer in the custody of the FMC-Rochester but, rather, he is now in the custody of the authorities in California, over whom we have no jurisdiction. As a consequence, this case is quite similar, factually, to the situation in Copley v. Keohane, supra. In Copley, the petitioner, who was found incompetent to stand Trial, was confined, after being civilly committed under Title 18 U.S.C. §4246, at the Federal Medical Center in Springfield, Missouri ("FMC-Springfield"). Id. at 828. Prior to our Court of Appeals' decision on the case, however, the petitioner was conditionally released to a care center in Louisiana, under the supervision of the United States Probation Office for the Western District of Louisiana. Id. While the petitioner was only conditionally released, which could, consequently, be revoked at any time, he was not in the custody of anyone over whom our Court of Appeals had jurisdiction. Id. As a result, the Court ruled that "there is

no entity that we can order to effect [the petitioner's] release should the writ issue," and the case was determined to be moot. Id.  The Court further held that, even though the petitioner's release was conditional, his circumstances did not fall within the narrow exception to the mootness doctrine -- that is, "capable-of-repetition-yet-evading-review" -- because the Petitioner could not demonstrate that there was a "reasonable likelihood" that his conditional release would be revoked, or that he would be returned to FMC-Springfield. Id.

The very same is true here.  The only Respondent individually named by the Petitioner is Marty C. Anderson ("Anderson"), who is the Warden of FMC-Rochester.[3]  However, the Petitioner is no longer in the custody of Anderson, but rather, his custody is in the hands of the El Dorado County Detention Center.  See, Notice of Change of Address, Docket No. 18.  Since this Court no longer has jurisdiction over anyone responsible for the Petitioner's custody, and his Petition is

---

[3] As pointed out by Respondents, the only proper Respondent in this matter is the Petitioner's custodian, i.e., Marty C. Anderson, the Warden of FMC Rochester.  See, Title 28 U.S.C. §§2242, 2243; Rumsfeld v. Padilla, 542 U.S. 426, 435-36 (2004); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 495-96 (1973); United States v. Chappel, 208 F.3d 1069, 1069-70 (8th Cir. 2000).

resultantly moot, we recommend that the Petition for Writ of Habeas Corpus be denied, as moot.[4]

NOW, THEREFORE, It is –

RECOMMENDED:

That the Petition for Writ of Habeas Corpus [Docket No. 1] be dismissed as moot.

Dated: July 28, 2006                              *s/Raymond L. Erickson*
                                                                Raymond L. Erickson
                                                                CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than August 14, 2006,** a writing which specifically identifies those portions of the Report

---

[4] We also note that the Petitioner has argued that the Respondents have conspired with El Dorado County officials to undermine the requirements of the IADA. See, Petitioner's Supplemental Response, Docket No. 16, at pp. 4-5. Even if we found the ruling in Copley v. Keohane, supra, inapposite, we note that there is no competent evidence of a conspiracy between the Respondents and El Dorado County, and the Petitioner's concession, that he failed to comply with the requirements of the IADA, undermines any claim he may have to relief.

to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 14, 2006,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.